## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**WENDELL CRUSE,**

        **Plaintiff,**                    **Civil Action 2:20-cv-5939**
                                                      **Magistrate Judge Elizabeth P. Deavers**

    **v.**

**WAL-MART STORES EAST, L.P.,** *et al.***,**

        **Defendants.**

### OPINION AND ORDER

With the consent of the parties and by Order of Reference (ECF No. 17), pursuant to 28 U.S.C. § 636(c), this matter is before the Court for consideration of the Motion of Defendant Franklin County for Summary Judgment (ECF No. 40 ("Franklin County's Motion")), Plaintiff Wendell Cruse's Motion for Partial Summary Judgment on Liability of Defendant Franklin County for Violating His Constitutional Rights Against Overdetention (ECF No. 42 ("Plaintiff's Motion")), and Defendant Wal-Mart Stores East, L.P.'s Motion for Summary Judgment (ECF No. 48 ("Walmart's Motion")).  The Motions have been fully briefed and are ripe for review.  (*See* ECF Nos. 79-85.)  For the following reasons, Franklin County's Motion (ECF No. 40) is **GRANTED IN PART** and **DENIED IN PART**, Plaintiff's Motion (ECF No. 42) is **DENIED**, and Walmart's Motion (ECF No. 48) is **GRANTED**.

### I.  BACKGROUND

The factual allegations of this case are largely undisputed.  Plaintiff, an African American male, was incarcerated in the Franklin County Corrections Center and the Franklin County Community Based Correctional Facility from April 29, 2019 through October 29, 2019.  (ECF

No. 34 at PAGEID ## 224, 226, ¶¶ 8, 17; ECF Nos. 42-3, 42-5.) On October 9, 2019, Plaintiff was accepted into the Franklin County Common Pleas Court's Treatment is Essential to Success program, which meant he was eligible to be sent home on October 31, 2019, to live under house arrest while he participated in the program. (*See* ECF No. 42-6.) On October 30, 2019, Franklin County employee Teresa Kidd initiated the process to release Plaintiff to house arrest, but noted that Plaintiff was subject to an arrest warrant which had been issued by the Canal Winchester Mayor's Court on September 5, 2019 for an offense committed on August 17, 2019 – while Plaintiff was incarcerated. (ECF No. 34 at PAGEID ## 227, 230, ¶¶ 24, 52, 56.)

Unbeknownst to Plaintiff, on August 17, 2019, an unknown individual stole a hoverboard from the Walmart Canal Winchester Supercenter (the "Canal Winchester Walmart"). (*Id.* at PAGEID # 227, ¶ 24.) In investigating that theft, Defendant Daniel Campbell, an Asset Protection Associate for Defendant Wal-Mart Stores East, L.P. ("Walmart"), ultimately (mis)identified Plaintiff as the individual who committed the theft. (*Id.* at ¶ 32.) As a result, on August 29, 2019, Mr. Campbell filed a criminal complaint against Plaintiff in the Canal Winchester Mayor's Court. (*Id.* at PAGEID # 228, ¶ 38.) Plaintiff alleges that Mr. Campbell characterized Plaintiff as a "repeat offender" who had "trespassed on a prior occasion," while in reality Plaintiff had never been to the Canal Winchester Walmart. (*Id.* at PAGEID ## 227-228, ¶¶ 29, 34, 41.) Because Plaintiff had never been to that store – let alone on the day of the theft – Plaintiff alleges that such Mr. Campbell had used facial recognition software to misidentify Plaintiff. (*Id.* at PAGEID # 229, ¶ 43.)

After reviewing Mr. Campbell's complaint, Fairfield County Sheriff's Deputy Trena Kohler completed an Affidavit in Support of Probable Cause, assigned it a criminal case number, issued it under signature, and requested an arrest warrant. (*Id.* at PAGEID ## 228-229, ¶¶ 41,

2

45.)  Plaintiff alleges that neither Mr. Campbell nor Deputy Kohler reviewed Walmart's video footage of the shoplifting, nor did they consult the Ohio Law Enforcement Automated Data System ("LEADS") as part of their investigation, and that doing either would have exonerated Plaintiff given Plaintiff's incarceration at the time of the shoplifting.  (*Id.* at PAGEID ## 229-230, ¶¶ 47-51.)  Regardless, on September 5, 2019, the Canal Winchester Mayor's Court issued an arrest warrant for Plaintiff and set a bond of $500.  (*Id.* at PAGEID # 230, ¶ 52.)  Plaintiff did not learn of the warrant while he was incarcerated, however. He, therefore, did not post bond and the warrant remained valid on October 30, 2019.  (*Id.* at ¶¶ 54-55.)

Because of the outstanding arrest warrant, Plaintiff was not released to house arrest as scheduled.  (*Id.* at PAGEID # 231, ¶ 65.)  Plaintiff alleges that he told various Franklin County Jail staff that it was impossible for him to have committed the offense on August 17, 2019, and that "[o]ver the next several days" Plaintiff attempted to contact his public defender without success.  (*Id.* at ¶¶ 66, 68.)  Plaintiff alleges that despite the fact that "[h]is situation had become known to other jail staff and prisoners, and he was observably suffering from being unjustly imprisoned," he remained incarcerated at the Franklin County Jail instead of either being released to house arrest or transferred to Fairfield County, the adjacent county where the outstanding arrest warrant was issued.  (*Id.* at PAGEID # 232, ¶¶ 71-72.)  On November 13, 2019, Plaintiff was able to communicate to the Canal Winchester Mayor's Court that he could not have committed the offense on August 17, 2019.  The Canal Winchester Mayor's Court issued a recall of the outstanding warrant.  (*Id.* at PAGEID # 233, ¶¶ 79-83.)  Then, on November 14, 2019, Plaintiff was released on probation to house arrest.  (*Id.* at ¶ 85.)

On November 18, 2020, Plaintiff filed the subject action.  (ECF No. 1.)  Over the course of the litigation, Plaintiff amended his allegations three times, ultimately filing the operative

Third Amended Complaint on December 8, 2021.  (*See* ECF Nos. 8, 31, 34.)  In the Third

Amended Complaint, Plaintiff alleges that Defendants Campbell and Walmart (the "Walmart

Defendants") committed malicious prosecution and acted negligently, and that Defendant

Franklin County and various John and Jane Doe Defendants (the "Franklin County Defendants")

violated his constitutional rights by delaying his release to home arrest.  (ECF No. 34 at PAGEID

## 235-237.)

On May 16, 2022, Defendant Franklin County filed its Motion, generally arguing that the

Franklin County Defendants were entitled to summary judgment on all of Plaintiff's claims

against them.  (ECF No. 40.)  Also on May 16, 2022, Plaintiff filed his Motion, generally arguing

that he is entitled to summary judgment on his claims against only the Franklin County

Defendants.  (ECF No. 42.)  On June 6, 2022, the Walmart Defendants filed their, generally

arguing that the Walmart Defendants are entitled to summary judgment on all of Plaintiff's

claims against them.  (ECF No. 48.)  The subject briefs have been fully briefed and are thus ripe

for judicial review.

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment

if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden of proving that no

genuine issue of material fact exists falls on the moving party, "and the court must draw all

reasonable inferences in the light most favorable to the nonmoving party."  *Stransberry v. Air

Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (citing *Vaughn v. Lawrenceburg

Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a

party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, 439 F. App'x 492, 495-496 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however 'do more than simply show that there is some metaphysical doubt as to the material facts,'. . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a 'genuine' dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal citation omitted).

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (internal citation omitted). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stransberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

## III. ANALYSIS

Here, Plaintiff asserts two causes of action against the Walmart Defendants and one cause of action against the Franklin County Defendants. (*See* ECF No. 34 at PAGEID ## 235-237.) All three causes of action are implicated in the subject summary judgment briefing. Accordingly, the Court will discuss Plaintiff's claims against each set of Defendants in turn.

## A.     Claims Against the Walmart Defendants (First and Second Claims).

Plaintiff's first two claims are against the Walmart Defendants for Malicious Prosecution (First Claim) and Negligence (Second Claim).  (ECF No. 34 at PAGEID ## 235-236.)  In Walmart's Motion, Walmart argues that "[t]his case resolves on immunity," stating that "[t]he Walmart Defendants' act of filing charges invokes broad and absolute immunity from these claims" and that "[a]t worst, the Walmart Defendants are entitled to qualified immunity."  (ECF No. 48 at PAGEID # 1109.)  Those immunity issues aside, the Walmart Defendants further argue that "there are no viable claims" because "the charges were filed with probable cause and without any malice" and because "Plaintiff's negligence claim is based on an allegation of facial recognition software that indisputably does not exist."  (*Id.*)  The Court will discuss these issues sequentially, beginning with a joint discussion of the Walmart Defendants' potential immunity from Plaintiff's Malicious Prosecution claim.

### 1.     Immunity and Plaintiff's Malicious Prosecution Claim (First Claim).

As a preliminary matter, the Walmart Defendants contend that they "cannot be held civilly liable for filing charges against [Plaintiff]" because "[s]tatements made in judicial proceedings are absolutely privileged under Ohio law and may not be the basis for civil liability."  (ECF No. 48 at PAGEID # 1112 (citations omitted).)  The Walmart Defendants make a distinction between statements to law enforcement and the filing of charges, arguing that the latter (which occurred here) entitles them to absolute immunity.  (*Id.* at PAGEID # 1113.) Alternatively, the Walmart Defendants also argue that "[e]ven if this Court applies a qualified immunity analysis, the result is the same."  (*Id.* at PAGEID ## 1114-1115.)

In response, Plaintiff argues that the Walmart Defendants are "wrong as a matter of law" on absolute immunity, because "the way [Defendant] Campbell filed charges was through his

statements to a law enforcement officer falsely identifying [Plaintiff] as the shoplifter," so
"[t]here is no legal difference" under the law. (ECF No. 62 at PAGEID ## 1588, 1609.)
Plaintiff submits that "[a]bsolute immunity for [Defendant Campbell's] false identification is
unwarranted under Ohio law, while qualified immunity provides ample protection for any non-
malicious efforts to secure an arrest warrant." (*Id.* at PAGEID # 1611.) But with regard to
qualified immunity, Plaintiff argues that "the summary judgment motion turns on whether a
reasonable jury could infer the absence of probable cause, and in turn, malice, from the facts
presented." (*Id.* at PAGEID # 1612.) Plaintiff then argues, at length, that "a jury could conclude
that [Defendant Campbell's] evidence fell short of probable cause," so the Walmart Defendants
should not be entitled to qualified immunity. (*Id.* at PAGEID ## 1612-1621.)

In their Reply brief, the Walmart Defendants reiterate that absolute immunity applies
because "Plaintiff ignores the nature of the statements" to police, and argues that absolute
immunity attaches to citizens filing criminal complaints, as Defendant Campbell did here. (ECF
No. 68 at PAGEID # 1650.) Regardless of the absolute immunity analysis, the Walmart
Defendants also argue that qualified immunity can only be overcome by clear and convincing
evidence that the subject communication was made with actual – not legal – malice, but Plaintiff
has failed to establish that the Walmart Defendants acted with actual malice. (*Id.* at PAGEID ##
1651-1653.)

The Court agrees with the Walmart Defendants, in part, insofar as the Court finds that the
Walmart Defendants are entitled to qualified immunity[1] for Plaintiff's Malicious Prosecution

---

[1] This conclusion obviates the need for the Court to resolve whether the Walmart Defendants
would alternatively be entitled to absolute immunity, an issue with which both state and federal
courts have struggled. *See Dehlendorf v. City of Gahanna*, 786 F. Supp. 2d 1358, 1360-1365

7

claim.[2]  First, "[t]here is a line of appellate decisions that hold statements made to police officers are protected by a qualified privilege."  *Dehlendorf v. City of Gahanna*, 786 F. Supp. 2d 1358, 1363 (S.D. Ohio 2011) (collecting cases).  But not all statements given to the police are protected by a qualified privilege.  In order to be eligible for qualified immunity a defendant must establish that:  (1) he acted in good faith; (2) there was an interest to be upheld; (3) the statement was limited in its scope to the purpose of upholding that interest; (4) the occasion was proper; and (5) the publication was made in a proper manner and only to proper parties.  *Id.* at 1364 (citing *Mosley v. Evans*, 90 Ohio App.3d 633, 636, 630 N.E.2d 75 (1993); *Hahn v. Kotten*, 43 Ohio St.2d 237, 246, 331 N.E.2d 713 (1975); *A & B-Abell Elevator Co. v. Columbus/Central Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 8, 651 N.E.2d 1283 (1995)).

Here, the Walmart Defendants demonstrated that all five elements are met to establish qualified immunity.  (ECF No. 48 at PAGEID ## 1114-1115.)  In response, Plaintiff disregarded these five elements, argued instead that "[q]ualified immunity is defeated by a reasonable jury's finding of malice," and then set forth to demonstrate that there exists a genuine factual dispute regarding whether the Walmart Defendants acted with malice.  (ECF No. 62 at PAGEID ## 1611-1615.)  In their Reply brief, the Walmart Defendants maintain that "[m]alice and actual

---

(S.D. Ohio 2011) (finding qualified immunity available for statements made to law enforcement, while noting that some Ohio courts have afforded absolute immunity) (collecting cases).

[2] The Walmart Defendants have provided no basis for the Court to find that they are similarly immune from Plaintiff's Negligence claim (Second Claim).  While the Walmart Defendants argue that they are immune from liability related to Defendant Campbell's Voluntary Statement to the Fairfield County Sheriff's Office, Plaintiff's Negligence claim is unrelated to this issue.  (ECF No. 48 at PAGEID ## 1112-1115.)  Instead, Plaintiff's Negligence arises out of the Walmart Defendants' use of "facial recognition hardware and software and computer-based programs that they knew or should have known were prone to misidentification."  (*See* ECF No. 34 at PAGEID # 236.)

malice are not the same thing," and urge that Plaintiff must show clear and convincing evidence of actual malice to overcome qualified immunity. (ECF No. 68 at PAGEID # 1652.) The Walmart Defendants submit that "it is clear [no actual malice] existed," however, and that Plaintiff's argument that Walmart should have "taken more photos, or investigated further . . . does not satisfy the actual malice requirement." (*Id.* at PAGEID # 1653.)

As a preliminary matter, the Court finds that in the absence of any response to the Walmart Defendants' argument that all five elements are met to establish qualified immunity, Plaintiff has essentially waived that argument. *Alexander v. Carter for Byrd*, 733 F. App'x 256, 261 (6th Cir. 2018) (citation, quotations, and alteration omitted) ("When a plaintiff fails to address a claim in response to a motion for summary judgment, the claim is deemed waived.") (internal quotation marks and alteration omitted) (quoting *Haddad v. Sec'y, U.S. Dept. of Homeland Sec.*, 610 F. App'x. 567, 568-69 (6th Cir. 2015) (quoting *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013))). Accordingly, the issues before the Court are simply whether malice, or actual malice, can overcome the Walmart Defendants' undisputed showing of qualified immunity; and, if so, whether a genuine issue of fact exists in this case regarding whether the Walmart Defendants acted with the requisite degree of malice. For the reasons set forth below, the Court finds that actual malice can overcome a *prima facie* showing of qualified immunity, but that the record of this case contains no evidence that the Walmart Defendants acted with actual malice.

First, while the Walmart Defendants are correct that Plaintiff failed to cite to any authority in arguing that qualified immunity can be defeated by a finding of malice, Plaintiff has not mischaracterized Ohio law. To this end, this Court recently held that "[o]nce a defendant demonstrates the existence of qualified privilege, the plaintiff can only prevail upon a showing of

*actual malice*." *Hensley v. Wester Chester Twp.*, No. 1:21CV373, 2022 WL 4621432, at \*10 (S.D. Ohio Sept. 30, 2022) (emphasis added) (citing *Knox v. Neaton Auto Prod. Mfg., Inc.*, 375 F.3d 451, 460 (6th Cir. 2004) (citing *Evely v. Carlon Co., Div. of Indian Head, Inc.*, 4 Ohio St.3d 163, 165, 166, 447 N.E.2d 1290, 1293 (Ohio 1983)); *Foley v. Univ. of Dayton*, No. 3:15-CV-96, 2015 WL 8216209, at \*5 (S.D. Ohio Dec. 7, 2015) ("A qualified privilege, once it is found to exist, can be defeated only by a clear and convincing showing that the communication was made with *actual malice*.") (emphasis added; internal quotation marks omitted) (quoting *A & B-Abell Elevator Co. v. Columbus/Central Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 11,651 N.E.2d 1283, 1292 (1995)).

As the Walmart Defendants correctly observe, "[m]alice and actual malice are not the same thing." (ECF No. 68 at PAGEID # 1652.) Under Ohio law, "[a]ctual malice is that state of mind under which a person's conduct is characterized by hatred or ill will, a spirit of revenge, retaliation, or a determination to vent his feelings upon other persons." *Schreiber v. State Farm Ins. Co.*, 494 F. Supp. 2d 758, 769–70 (S.D. Ohio 2007) (internal citation marks omitted) (quoting *Pickle v. Swinehart,* 170 Ohio St. 441, 443, 166 N.E.2d 227, 229 (Ohio 1960) (citations omitted)). In the context of a qualified immunity, Ohio courts have held that actual malice is defined as "acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Thomas v. Murry*, 8th Dist. Cuyahoga No. 109287, 2021-Ohio-206, ¶ 57 (quoting *Lewandowski v. Penske Auto Group*, 8th Dist. Cuyahoga No. 94377, 2010-Ohio-6160, at ¶ 26) (quotations omitted).

Against that background, the Court agrees with the Walmart Defendants that Plaintiff has failed to produce any evidence of actual malice. Indeed, as the Walmart Defendants observe, a prerequisite to a finding of actual malice is a determination that the statement at issue was "false

or [made] with reckless disregard as to [its] truth or falsity."  Here, the statement at issue

contained no false statements.  Indeed, the entirety of Defendant Campbell's Voluntary

Statement to the Fairfield County Sheriff's Office reads as follows:

> I Daniel Campbell while working asset protection for Walmart noticed that a
> hoverboard that we put out was missing. I reviewed the video and observed a male
> select the hoverboard and place it in a cart with some other items. He then
> proceeded to the law & garden doors where he pushed them open and exited
> without purchasing the merchandise. I got a picture and sent out a BOLO and he
> was recognized as repeat offender Wendell Cruse. I reviewed the video to
> determine what all the item [sic] were and filed charges.

(ECF No. 60-1 at PAGEID # 1546.)  This five-sentence statement makes the following

assertions:  (i) Defendant Campbell noticed a hoverboard was missing; (ii) Defendant Campbell

reviewed video footage and observed the hoverboard being taken by a male who left the store

without paying for it; (iii) Defendant Campbell got a picture of the suspect and sought help

identifying the suspect; (iv) the suspect was recognized as Plaintiff; and (v) Defendant Campbell

reviewed the video footage to confirm what was taken prior to filing the charges.  (*Id.*)

　　　None of these assertions of fact is false on its face.  Under these circumstances, the Court

is hard-pressed to identify any genuine issue of material fact as to whether Defendant Campbell

acted with any actual malice in making the Voluntary Statement to the Fairfield County Sheriff's

Office.  While Plaintiff maintains that Defendant Campbell "provided demonstrably false

information to procure an arrest warrant," this argument is circular because it necessarily

suggests that ***any*** misidentification would be evidence of actual malice.  (ECF No. 62 at

PAGEID # 1615.)  But this is not the standard under Ohio law, and while Plaintiff has

demonstrated that Defendant Campbell's investigation resulted in the mistaken identification of

Plaintiff for a crime he did not commit, negligent mistakes are not necessarily the result of actual

malice.  *A & B-Abell Elevator Co.*, 73 Ohio St. 3d at 13 ("Mere negligence is not enough to

establish actual malice.") (quoting *Dale v. Ohio Civ. Serv. Emp. Assn.*, 57 Ohio St.3d 112, 118, 567 N.E.2d (1991))*; see also Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020) ("Failure to recognize a mistake or ambiguity and its potential consequences is not evidence of a reckless disregard for the truth.") (citing *St. Amant v. Thompson*, 390 U.S. 727, 733, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)); *Davis v. Lang*, 706 F. App'x 551, 559–60 (11th Cir. 2017) ("[M]istaken beliefs and inaccurate statements do not rise to the level of actual malice. At worst, Sergeant Lang's inaccuracies and mistakes constituted negligent actions during the investigation, which alone cannot sustain a finding of actual malice.") (internal citations omitted). Accordingly, Plaintiff cannot rest on the mere fact that Plaintiff was misidentified to prove actual malice by the Walmart Defendants.

Plaintiff has failed to identify any evidence from which a jury could reach any other conclusion. Plaintiff instead disregards the distinction between legal malice and actual malice. But even when construing Plaintiff's briefing as suggesting that the Walmart Defendants acted with actual malice, the Court cannot agree. To this end, the most generous reading of Plaintiff's briefing would find that Plaintiff believes that the Walmart Defendants acted with actual malice for any or all of the following reasons: (i) Plaintiff was misidentified, notwithstanding "readily apparent physical differences" between Plaintiff and the actual thief; (ii) the Walmart Defendants did not "inquire[] about whether anyone on the GroupMe knew of [Plaintiff's] whereabouts or recent activity" and "did not ask any other questions in the GroupMe"; (iii) the Walmart Defendants did not "request[] a record check that would have established [Plaintiff's] incarceration" or independently check public sources to the same effect; (iv) the Walmart Defendants "rush[ed] to judgment"; and (v) the Walmart Defendants should have "eliminat[ed] exculpatory evidence." (ECF No. 62 at PAGEID ## 1611-1620.) Plaintiff also argues that "[a]

12

jury may also infer [Defendant Campbell's] desire to quickly close a shoplifting case in pursuit of performance accolades was the real motivation for identifying, charging, and prosecuting [Plaintiff]." Yet, these assertions amount to nothing more than speculation that is unsupported by the evidence of record. (ECF No. 62 at PAGEID # 1613) In the absence of any identifiable facts in the record, this speculation is insufficient to defeat summary judgment. *Jennings v. Cnty. of Monroe*, 630 F. App'x 547, 555 (6th Cir. 2015) ("[S]peculation, however, is insufficient to defeat summary judgment. A party cannot defeat summary judgment with conclusory allegations, speculation, and unsubstantiated assertions.") (internal quotation marks and citations omitted); *Cheryl & Co. v. Krueger*, 536 F. Supp. 3d 182, 206 (S.D. Ohio 2021) (holding that speculation regarding a party's motive "will not suffice to defeat a motion for summary judgment.") (citing *Griffin v. Jones*, 170 F. Supp. 3d 956, 963 (W.D. Ky. 2016)).

In sum, Plaintiff's arguments are misplaced, as they add nothing to the Court's evaluation of whether the Walmart Defendants acted with actual malice. Because, in the absence of any challenge by Plaintiff, there is no dispute that the Walmart Defendants are entitled to qualified immunity. And because Plaintiff has failed to demonstrate any evidence of actual malice which would defeat that qualified immunity, the Court finds that the Walmart Defendants are entitled to summary judgment on this threshold issue. *See Stransberry*, 651 F.3d at 486 ("When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate.") (citing *Celotex*, 477 U.S. at 322-23.).

Accordingly, Walmart's Motion is **GRANTED** insofar as the Walmart Defendants are entitled to qualified immunity from Plaintiff's Malicious Prosecution claim (First Claim).

13

**2. Negligence (Second Claim).**

The Walmart Defendants are not similarly entitled to qualified immunity from Plaintiff's

Negligence cause of action, however, because as discussed above Plaintiff's Negligence claim

does not relate to Defendant Campbell's Voluntary Statement to the Fairfield County Sheriff's

Office. Instead, Plaintiff's Second Claim against the Walmart Defendants is for their alleged

negligence associated with the use of facial recognition hardware and software, and Plaintiff's

claim reads in its entirety as follows:

> By securing and/or operating facial recognition hardware and software and
> computer-based programs that they knew or should have known were prone to
> misidentification, especially of African-Americans like Mr. Cruse, and using them
> to secure arrest warrants without taking steps to prevent misidentification,
> Defendants Walmart and Campbell proximately caused Mr. Cruse the foreseeable
> injuries he suffered.

(ECF No. 34 at PAGEID # 236, ¶ 103.)

In Walmart's Motion, the Walmart Defendants argue that Plaintiff has failed to state any

viable negligence claim against them for three reasons: (1) there was no facial recognition

software; (2) the Walmart Defendants owed no duty to determine if Plaintiff was incarcerated;

and (3) even if a duty was owed, the Walmart Defendants were not the proximate cause of

Plaintiff's alleged injury. (ECF No. 48 at PAGEID ## 1115-1116.) In response, Plaintiff argues

that his claim arises from Defendant Campbell's failure to take reasonable care in performing his

job duties and instituting an arrest of a misidentified suspect. (ECF No. 62 at PAGEID ## 1621-

1624.) Plaintiff submits that employees such as Defendant Campbell owe a duty of care "to

individuals they identify as shoplifters and then instigate the issuance of an arrest warrant," and

that under the circumstances of this case Defendant Campbell "stopped far short of reasonable

efforts to ensure a true identification." (*Id*.) In their Reply brief, the Walmart Defendants argue

that "Plaintiff does not dispute that there is no facial recognition software or computer program

14

at issue here," but "Plaintiff's negligence claim was plainly predicated on such a system's existence." (ECF No. 68 at PAGEID # 1653.) The Walmart Defendants further submit that by arguing that Defendant Campbell's investigation, as a whole, was unreasonable, Plaintiff has improperly "pivot[ed] to a new theory . . . after three amended complaints." (*Id.* at PAGEID # 1654.)

To the Court, however, these arguments miss the mark. For while Plaintiff's claim is packaged as a straightforward negligence cause of action, it appears clear to the Court that Plaintiff is actually attempting to prosecute a claim for negligent misidentification. (*See* ECF No. 34 at PAGEID # 224, ¶ 9 (alleging that the Walmart Defendants "secured and/or operated facial recognition hardware and software despite knowing that it generates mistaken identifications, particularly of African-American suspects, and ***fail[ed] to adopt and implement safeguards against reasonably foreseeable misidentification***") (emphasis added); *see also* ECF No. 62 at PAGEID # 1624 (arguing that Defendant Campbell "stopped far short of reasonable efforts ***to ensure a true identification***") (emphasis added).) Indeed, in his Opposition brief Plaintiff argues that the "duty" element of his negligence claims rests on a duty to "***anticipate the risk of misidentification*** and foresee the injury an arrest would inflict on a misidentified suspect." (ECF No. 62 at PAGEID # 1623 (emphasis added).)

The Supreme Court of Ohio, however, has made clear that Ohio law does not support negligent misidentification claims. *Foley v. Univ. of Dayton*, 2016-Ohio-7591, ¶ 2, 150 Ohio St. 3d 252, 253, 81 N.E.3d 398, 399 ("[W]e conclude that a plaintiff does not have a cause of action in tort for negligent misidentification and that it would contravene public policy to allow such a claim."). And following that decision, federal courts in this Circuit have uniformly rejected similar efforts to pursue negligence claims based on misidentification. *See Mango v. City of*

15

*Columbus*, No. 2:19-CV-3120, 2020 WL 5247939, at *18 (S.D. Ohio Sept. 3, 2020) ("[T]he Ohio Supreme Court suggested that the only tort Ohio recognizes for misuse of civil or criminal process is malicious prosecution and that the only other torts appropriate for 'seeking redress for an injury caused by another's false reporting of a crime' are defamation, wrongful or false arrest or imprisonment, and false light invasion of privacy.") (citing *Foley*); *Beckham v. City of Euclid*, 689 F. App'x 409, 417 (6th Cir. 2017) (affirming summary judgment for defendants because "the Ohio Supreme Court [has] clarified that Ohio does not recognize the tort of negligent misidentification.") (internal quotation marks omitted) (citing *Foley*).  Considering these cases and the clear guidance from the Supreme Court of Ohio, the Court cannot entertain Plaintiff's creative attempt to maneuver around Ohio law, and therefore finds that Plaintiff has failed to state a viable negligence claim.  Accordingly, Walmart's Motion is **GRANTED** with regard to Plaintiff's Negligence claim (Second Claim).[3]

## B.    Claims Against the Franklin County Defendants (Third Claim).

Both Plaintiff and the Franklin County Defendants filed competing motions for summary judgment regarding Plaintiff's Third Claim, which alleges that the Franklin County Defendants violated Plaintiff's constitutional rights.  (ECF Nos. 40, 42.)  On one side, Plaintiff argues that he is entitled to summary judgment because the Franklin County Defendants kept Plaintiff beyond

---

[3] Even if, *arguendo*, Ohio law supported the type of negligence claim Plaintiff sets forth to assert, the Court would agree with the Walmart Defendants that the undisputed lack of any facial recognition software is fatal to Plaintiff's claim.  Specifically, the Court notes that Plaintiff – after four attempts at filing an operative Complaint – has ***repeatedly*** alleged that the Walmart Defendants' negligence arose from the procurement and operation of facial recognition software. (*See* ECF No. 1 (Complaint) at PAGEID # 12, ¶ 82; ECF No. 8 (First Amended Complaint) at PAGEID # 56, ¶ 82; ECF No. 31 (Second Amended Complaint) at PAGEID # 198, ¶ 103; ECF No. 34 (Third Amended Complaint) at PAGEID # 236, ¶ 103.)  Because Plaintiff now concedes that no such software existed, there is no factual foundation for Plaintiff's attempted Negligence claim.

his release date for an unreasonable period of time, in violation of Plaintiff's constitutional right to be free from continued detention beyond the period of his lawful sentence.  (*See generally* ECF No. 42.)  On the other side, the Franklin County Defendants argue that there is no evidence of any Franklin County policy that was the cause of Plaintiff's alleged constitutional violation, and that Franklin County "lawfully held Plaintiff pursuant to a warrant that it verified was valid and remained in place."  (ECF No. 40 at PAGEID ## 271-272.)  The Franklin County Defendants further argue that "Plaintiff has failed to identify and serve proposed defendants John Doe and Jane Smith, and any claims against those unnamed individuals must be dismissed."  (*Id.* at PAGEID # 272.)[4]  The Court will address the parties' substantive arguments in turn.

In the operative Complaint, Plaintiff alleges that the Franklin County Defendants "violated the Fourth, Eighth, and Fourteenth Amendments" by doing two related things:  (1) adopting and implementing policies that caused Plaintiff to be confined "without even investigating his convincing explanation" that the warrant was invalid; and (2) disregarding Plaintiff's "convincing explanation of the invalidity of the outstanding arrest warrant" and "failing to conduct the most rudimentary investigation."  (ECF No. 34 at PAGEID ## 236-237,

---

[4] Plaintiff does not respond to this argument.  (*See* ECF Nos. 61, 69.)  Accordingly, and given the fact that Plaintiff has amended his Complaint three times and still has failed to identify and serve Defendants John Doe or Jane Smith, the Court will dismiss Plaintiff's claims against them. *Wicker v. Lawless*, 278 F. Supp. 3d 989, 1003 (S.D. Ohio 2017) ("[T]he Court will dismiss claims against John Doe, as Plaintiff never amended her Complaint prior to the running of the statute of limitations to specifically name him.") (citing *Shepherd v. City of Columbus*, No. 04–CV–302, 2006 WL 840386, at *3-4, at *11–12 (S.D. Ohio Mar. 30, 2006) (citing *Nicholson v. City of Chattanooga*, 1:04–cv–168, 2005 WL 2657001, at *10-11, at *31-32 (E.D. Tenn Oct. 17, 2005) (dismissing John Doe defendants where plaintiff failed to timely amend the complaint to name and serve John Doe defendants))).  Franklin County's Motion is therefore **GRANTED IN PART** as to Plaintiff's claims against Defendants John Doe and Jane Smith.

¶¶ 105-106.)[5] Thus, it is clear to the Court that the basis of Plaintiff's constitutional claim against the Franklin County Defendants is that they improperly continued to detain him without reasonably investigating Plaintiff's "convincing explanation" that such continued detention was improper. (*Id.*)

The Court of Appeals for the Sixth Circuit has held that in limited circumstances, "someone who is wrongly imprisoned as a result of mistaken identity can state a constitutional claim against his jailers based on their failure to ascertain that they had the wrong man." *Jackson v. Lawson*, 760 F. App'x 394, 396 (6th Cir. 2019) (internal quotations omitted) (quoting *Gray v. Cuyahoga Cty. Sherrif's Dep't*, 150 F.3d 579, 582 (6th Cir. 1998), *opinion amended on denial of reh'g*, 160 F.3d 276 (6th Cir. 1998)). Specifically, the Sixth Circuit has held that "it is clear that officers act with 'something akin to deliberate indifference' when they fail to verify the identity of the person they have in custody, despite knowledge or notice that the person in custody is not the one listed in the arrest warrant." *Seales v. City of Detroit*, 724 F. App'x 356, 363 (6th Cir. 2018).

In *Jackson*, the Sixth Circuit provided the following analysis of this type of constitutional claim:

> The general rule is that when an individual is arrested pursuant to a facially valid warrant and detained despite protestations of mistaken identity, the individual's imprisonment is not constitutionally repugnant. *See, e.g.*, *Baker v. McCollan*, 443 U.S. 137, 144, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). However, "mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of liberty without due process of law." *Id.* at 145, 99 S.Ct. 2689 (internal quotation marks and ellipsis omitted). We have subsequently elaborated that in these situations, a plaintiff must show that a government official "act[s] with something akin to deliberate

---

[5] The Court notes that Paragraph 107 of the operative Complaint is duplicative, verbatim, to Paragraph 105. (*Compare* ECF No. 34 at PAGEID # 236, ¶ 105 *with id.* at PAGEID # 237, ¶ 107.)

indifference in failing to ascertain that the [person] they had in custody was not the person wanted ... on the outstanding ... warrant." *Gray*, 150 F.3d at 583. Three factors generally inform the analysis: (1) the detention's length of time; (2) the extent to which the plaintiff protested his innocence; and (3) the availability of exculpatory evidence to the government official at the time of the detention. *Id.* at 582–83; *see also Seales v. City of Detroit*, 724 F. App'x 356, 362 (6th Cir. 2018).

*Id.* at 397.

Accordingly, the question for the Court is whether the evidence creates a genuine issue of material fact as to whether the Franklin County Defendants "acted with something akin to deliberate indifference" in failing to ascertain that Plaintiff was incapable of having committed the crime underlying the arrest warrant which served as the basis for the Franklin County Defendants' continued detention of Plaintiff. After evaluating the three factors set forth in *Gray*, the Court holds that it does. The Court will discuss each of the three *Gray* factors in turn.

### 1.      Length of Time.

First, as to the twelve days Plaintiff was detained, the Court finds that this factor weighs in Plaintiff's favor for purposes of surviving summary judgment, as similar lengths of detention have been found improper under analogous circumstances. In *Seales*, for example, the Sixth Circuit held that fourteen days of improper detention was sufficient to carry Plaintiff's burden of establishing the violation of his constitutional right in light of the Plaintiff's repeated protestations of misidentification and the availability of exculpatory evidence. *Seales*, 724 F. App'x at 364. Under similar facts here, the Court likewise finds that a jury could find that Plaintiff's twelve (12) day detention was sufficient to deprive Plaintiff of liberty without due process of law.[6]

---

[6] This Court also acknowledges that twelve days of incarceration has been found to be sufficient in similar cases outside of this Circuit. *See, e.g., Gray*, 150 F.3d at 582 (discussing "persuasive" authority which held that twelve days of detention "despite repeated assertions of mistaken identity . . . is certainly enough to state a claim for a deprivation of liberty without due process of

2.     **Extent of Plaintiff's Protests.**

Next, regarding the extent to which Plaintiff protested his innocence, the Court finds a

genuine issue of material fact for a jury to resolve.  On one hand, Plaintiff argues that he

"repeatedly complained to multiple Franklin County jail officers that he was being held for a

warrant on a crime that occurred while he was incarcerated."  (ECF No. 42 at PAGEID # 980

(citing ECF No. 43-8 at PAGEID # 1080-1082).)  While Plaintiff could not remember the exact

names of all of the officials to whom he complained (though he did identify by name a civilian

who works in the jail kitchen), where Plaintiff could not remember a person's name he testified

as to their titles and physical appearances, as well as to when he complained to them.  (*Id.*)

Plaintiff's detailed sworn testimony is therefore more than merely a "[c]onclusory statement

unadorned with supporting facts."  *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).[7]

Accordingly, Plaintiff's allegation finds sufficient factual support in the record to survive

summary judgment.  *Compare Seales*, 724 F. App'x at 364 (denying summary judgment for

defendants where "[plaintiff's] deposition transcript also supports his allegation that he protested

---

law.") (citing *Andujar v. City of Boston*, 760 F.Supp. 238 (D.Mass.1991)); *Regains v. Cnty. of Wayne*, No. 03-75101, 2005 WL 8177863, at *5 (E.D. Mich. Mar. 29, 2005) ("Plaintiff makes sufficient allegations upon which, if true, a trier of fact could reasonably determine that Plaintiff's detention for 12 days deprived him of liberty without due process of laws and Wayne County's inaction is the cause of his injury."); *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (concluding that Plaintiff "had a liberty interest in being free from a twelve-day incarceration without any procedural safeguard in place to verify the warrant he was detained on was his and in the face of his repeated protests of innocence.") (footnote omitted).

[7] In response, the Franklin County Defendants argue that Plaintiff was familiar with (and previously had used) the jail's formal grievance process system, but he failed to complain through that formal process in this instance.  (*See* ECF No. 40 at PAGEID ## 276-277.)  In light of Plaintiff's detailed testimony regarding the efforts he took to complain to the Franklin County Defendants, evidence regarding Plaintiff's failure to use the formal grievance process system only creates a factual conflict for a jury to resolve – especially given Plaintiff's argument that "[h]e did not submit a grievance call card about his innocence in the Canal Winchester case because that would have been contrary to policy."  (ECF No. 61 at PAGEID # 1567.)

his misidentification.") *with Thurmond v. Cnty. of Wayne*, 447 F. App'x 643, 649 (6th Cir. 2011) (Affirming summary judgment for Defendants where Plaintiff "did not say that he told them he was innocent, that he *might* have told them he was innocent, or that he told anyone at any of the [] facilities that he was innocent.") (emphasis in original).

### 3. Availability of Exculpatory Evidence.

Finally, the record also contains enough conflicting information regarding the availability of exculpatory evidence to create a genuine issue of material fact for a jury to resolve. Again, on one hand, Plaintiff argues that the subject arrest warrant and accompanying Complaint "recklessly omitted a material fact" – that is, the date of the theft – and that the Franklin County Defendants therefore "should not have blithely relied on the warrant and accompanying Complaint . . . in light of [Plaintiff's] repeated protestations that he absolutely could not have shoplifted in Canal Winchester on a date he was incarcerated[.]" (ECF No. 42 at PAGEID # 987.) In response, the Franklin County Defendants concede that "the date of the offense, and probable cause affidavit and other details and circumstances about the underlying criminal charge were not provided in the warrant," but argue that it "contained information correctly identifying Plaintiff by name, address, driver's license, date of birth, race, gender, height and weight." (ECF No. 40 at PAGEID # 275.)

Here, the "evidence" which exculpated Plaintiff is simple – the date of the underlying crime occurred was a date on which Plaintiff was incarcerated. For this reason, while there is no debate that the subject arrest warrant provided accurate information about Plaintiff, that does not absolve the Franklin County Defendants, because the warrant also included information which (at least arguably) should have put the Franklin County Defendants on notice that Plaintiff could not have committed the underlying crime. Specifically, the subject arrest warrant was signed on

September 5, 2019 and included a corresponding case number (19CRB00212) which plainly

indicated that the warrant was issued in 2019.[8]  (ECF No. 43-2 at PAGEID # 1014; *see also* ECF

No. 43-7 at PAGEID # 1051 (confirming that the warrant indicated that it was issued on

September 5, 2019).)  This information alone, even in the absence of any protests by Plaintiff,

created a questionable situation which arguably should have put the Franklin County Defendants

on notice that the subject arrest warrant likely was not – or at the very least, that it *might* not be –

related to Plaintiff.  *Burwell v. City of Lansing, Michigan*, 7 F.4th 456, 475 (6th Cir. 2021) ("It is

well established that a defendant may not escape liability because he refused to verify underlying

facts that he strongly suspected to be true, or declined to confirm inferences of risk that he

strongly suspected to exist.") (internal quotation marks and citations omitted); *see also Young v.

Campbell Cnty., Kentucky*, 846 F. App'x 314, 327 (6th Cir. 2021) (noting that "[a] jury could

reasonably conclude" that a prison official was deliberately indifferent by "notic[ing] a

questionable situation and yet fail[ing] to question" or investigate it) (citing *Farmer v. Brennan*,

511 U.S. 825, 843 n.8, 114 S. Ct. 1970, 1982, 128 L. Ed. 2d 811 (1994) (holding that a prison

official may not "escape liability if the evidence showed that he merely refused to verify

underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk

that he strongly suspected to exist")).

The Court also notes that there is no evidence that the Franklin County Defendants made

any attempt to verify information on the subject warrant.  *See Seales*, 724 F. App'x at 364-365

("Although there is record evidence that [Plaintiff] continuously protested the misidentification

---

[8] Plaintiff was originally incarcerated in Franklin County facilities on May 23, 2019.
Accordingly, the Court notes that by October 31, 2019 – the date Plaintiff on which was
scheduled to be released to house arrest, and the date on which the Franklin County Defendants
became aware of the subject arrest warrant – Plaintiff had spent slightly more than 50% of 2019
incarcerated in Franklin County facilities.

and that exculpatory evidence was readily available, there is no evidence that the officers made any attempt to verify [Plaintiff's] identity."). The lack of evidence on this point is jarring, for the amount of time needed to verify Plaintiff's protests of misidentification would have been a matter of minutes – if that – as it merely would have required checking the municipal court clerk's website to confirm that the underlying charge occurred while Plaintiff was incarcerated.

To this end, Plaintiff has properly highlighted deposition testimony from a corrections records officer where Plaintiff was detained, who confirmed that the Franklin County Defendants had access to several "programs . . . to find active warrants," including the municipal court website. (ECF No. 61 at PAGEID # 1569 (citing ECF No. 43-10 at PAGEID ## 1091-1092 ("Running them is sending them through the programs that we use to find active warrants, city, county, **muni court site**, NCIC, LEADS and the protection order search.") (emphasis added).) Such minimal effort as checking a website for objective information is far less than courts have expected of prison officials under other circumstances, which often call for at least some type of subjective evaluation. *See*, *e.g., Seales*, 724 Fed.App'x at 364-365 ("[N]othing suggests that officers checked [Plaintiff's] fingerprints, photographs, or biographical information[.]"); *Gray*, 150 F.3d at 583 (noting that there was no evidence that officers "conducted a reasonable inquiry into the discrepancy between the photograph and the real [suspect].").

Accordingly, the Court believes that these facts taken together are more than sufficient to permit a reasonable trier of fact to find that the Franklin County Defendants acted with something akin to deliberate indifference in failing to ascertain that Plaintiff had been misidentified on the outstanding warrant. But because a reasonable trier of fact could just as reasonably conclude otherwise, summary judgment is not appropriate for either Plaintiff or the Franklin County Defendants Plaintiff's Third Claim.

Accordingly, both Plaintiff's Motion and Franklin County's Motion are **DENIED** as to Plaintiff's Third Claim, except that Franklin County's Motion is **GRANTED IN PART** as to Plaintiff's claims against Defendants John Doe and Jane Smith.

## IV.  CONCLUSION

For the foregoing reasons, the Motion of Defendant Franklin County for Summary Judgment (ECF No. 40) is **GRANTED IN PART** and **DENIED IN PART**, Plaintiff Wendell Cruse's Motion for Partial Summary Judgment on Liability of Defendant Franklin County for Violating His Constitutional Rights Against Overdetention (ECF No. 42) is **DENIED**, and Defendant Wal-Mart Stores East, L.P.'s Motion for Summary Judgment (ECF No. 48) is **GRANTED**.  Accordingly, Defendants John Doe and Jane Smith are **DISMISSED**, and the Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in favor of Defendant Wal-Mart Stores East, L.P. and Daniel Campbell on all of Plaintiff's claims against them.

**IT IS SO ORDERED.**

**Date: January 5, 2023**          **/s/ *Elizabeth A. Preston Deavers***
                                    **ELIZABETH A. PRESTON DEAVERS**
                                    **UNITED STATES MAGISTRATE JUDGE**